*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. R. BOUKAMP, Minor.

UNPUBLISHED
April 28, 2022

No. 358218
Kent Circuit Court
Family Division
LC No. 19-0051711-NA

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Respondent appeals the trial court's order terminating her parental rights to her minor child, JB, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if child is returned to the parent).[1] We affirm.

## I. BACKGROUND

This matter began when a petition was filed in August 2019. In relevant part, the petition alleged that respondent had a history of substance abuse. The petition also alleged that respondent was homeless, had a history with Child Protective Services, and lacked the resources to care for JB. It was further alleged that, in July 2019, respondent permitted JB to reside in a home with an older child who had sexually assaulted JB in the past. The petition requested that the trial court authorize the petition, remove JB from respondent's care, and exercise jurisdiction. After a preliminary hearing, the trial court authorized the petition and ordered that JB be placed in foster care. Respondent was granted supervised parenting time.

In September 2019, respondent pleaded to several allegations in the petition. The trial court exercised jurisdiction and ordered that reasonable efforts toward reunification be made. Respondent was ordered to comply with the case service plan, which required her to submit to psychological and substance abuse assessments and to comply with and benefit from (1) parenting

---

[1] The trial court also terminated the parental rights of JB's father. He is not a party to this appeal.

classes, (2) mental health therapy, and (3) services to address substance abuse, including submitting to random drug screenings. Respondent was also ordered to attend parenting time and to locate and maintain stable housing and income.

Respondent was diagnosed with mental health issues, including borderline personality disorder and stimulant use disorder. In January 2020, respondent entered a 90-day inpatient treatment program. Respondent left the program early against medical advice. Although respondent obtained employment and participated in services after leaving treatment, she continued to struggle with her sobriety. In June 2020, respondent tested positive for THC, and the trial court warned respondent that she would not be able to reunite with JB if she continued to use substances. Nonetheless, respondent tested positive for alcohol and THC in the months that followed. In February 2021, respondent tested positive for cocaine, but denied that she had purposefully ingested cocaine. Instead, respondent asserted that marijuana she had smoked was laced with cocaine. In March 2021, the caseworker expressed concern that respondent was not taking her psychotropic medications and that she was self-medicating with marijuana. Additionally, although respondent had obtained housing, the housing was not appropriate for JB.

In May 2021, petitioner filed a supplemental petition, requesting termination of respondent's parental rights. The termination hearing was held in June and July 2021. Testimony was presented that respondent had failed to benefit from services, that respondent continued to be emotionally unstable, that respondent continued to have substance abuse issues, and that respondent lacked appropriate housing. After the close of proofs, the trial court concluded that reasonable efforts toward reunification had been made, that statutory grounds existed to support the termination of respondent's parental rights, and that termination of respondent's parental rights was in JB's best interests. This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting the statutory grounds cited in support of termination. We find no clear error warranting reversal.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made," with the reviewing court "defer[ring] to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

We conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was established under MCL 712A.19b(3)(c)(*i*), which provides:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order,

and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

In this case, at the time of termination, more than 182 days had "elapsed since the issuance of [the] initial dispositional order" with respect to respondent. See MCL 712A.19b(3)(c). Additionally, for the following reasons, we conclude that respondent failed to rectify the issues that led to adjudication.

JB was removed from respondent's care in August 2019, in part, because of her issues with substance abuse. In September 2019, respondent was referred to a substance abuse therapist. Despite providers recommending that respondent enter inpatient treatment at the beginning of the proceeding, respondent did not enter inpatient treatment until January 2020. In March 2020, respondent left treatment against the advice of her "treatment team" and indicated that she only entered treatment because her caseworker had "forced" her to do so. After leaving treatment, respondent tested positive for alcohol, THC, and cocaine, and she refused to take responsibility for her failure to maintain sobriety.[2]

In April 2021, respondent began attending a recovery skills group. Respondent expressed, however, that she was unsure why she needed to attend the group and reported that she was only attending because her caseworker was "making her." Respondent did not stop ingesting marijuana until after the termination proceedings commenced. Despite respondent's long history of substance abuse, she reported in July 2021 that her addiction was "not there" anymore. Thus, the record supports that respondent failed to rectify her issues with substance abuse.

Respondent also failed to demonstrate improvement in her ability to effectively parent and provide for JB, who has special needs, who often acts out, and who requires an emotionally stable caregiver. At the beginning of the proceeding, respondent was diagnosed with borderline personality disorder and stimulant use disorder. There were also concerns with respondent's parenting skills and her ability to establish "interpersonal stability." Respondent struggled with regulating her emotions throughout the proceeding, and she often failed to consistently take her psychotropic medication. One of the caseworkers did not believe that respondent had benefitted from the counseling provided to her during the proceeding. Indeed, in March 2021, respondent was hostile toward her caseworker's supervisor despite the fact that respondent was informed that the supervisor would be testifying at the termination hearing. As of June 2021, respondent continued to demonstrate "extreme emotional dysregulation" and continued to be aggressive and

---

[2] Respondent tested positive for THC 75 times, tested positive for cocaine 24 times, and missed 28 screenings during the proceeding. Out of 104 tests, respondent was only negative for substances 21 times. Respondent indicated at the July 2021 termination hearing that she had tested positive for substances because the company that provided the screens "prevented [her] from dropping clean when [she] was clean" because the company gave "false positives."

"very hostile" toward the supervisor and the caseworker. Importantly, respondent had an outburst during the June 2021 termination hearing.

Respondent also struggled with housing issues despite being provided with services. At the time of termination, respondent had stable housing, but it was not suitable for JB. Respondent had two roommates, and the home contained alcohol, marijuana, and drug paraphernalia. Respondent was in a relationship with one of her roommates. Respondent's boyfriend had a history of substance abuse, domestic violence, and "prior foster care services involvement. . . ." Specifically, a child had been removed from his care because of abuse and neglect. Despite being informed of this, respondent continued the relationship, and she was not initially forthcoming with the caseworker about the relationship. It was unclear at the time of termination whether respondent was financially dependent on her boyfriend. Although respondent was approved for Section 8 housing during the proceeding, she declined to move into that housing because her boyfriend would be unable to live with her. Thus, the totality of the evidence amply supports that respondent had not accomplished any meaningful change in the conditions that led to adjudication despite being offered services. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Furthermore, the record does not support that respondent would be able to rectify her issues within a reasonable time considering JB's age. See MCL 712A.19b(3)(c)(*i*). Respondent was either unable or unwilling to maintain sobriety during the proceeding, and she refused to take responsibility for the fact that JB was taken into care. At the time of termination, JB was nearly seven years old and had been out of respondent's care for 23 months. JB desperately required permanency and stability and could not wait an indefinite amount of time for respondent to improve. See, e.g., *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991) (holding that, because the Legislature did not intend for children to be left in foster care indefinitely, it is proper to focus on how long it will take a respondent to improve and on how long the involved children can wait). We therefore conclude that the trial court's finding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*) was not clearly erroneous. Because termination was proper under (c)(*i*), this Court need not specifically consider the additional grounds upon which the trial court based its decision. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).[3]

## III. BEST INTERESTS

Respondent next argues that the trial court "overlooked the weight of the evidence against termination of parental rights." We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). We review the trial court's best-interest determination for clear error. *Id.*

---

[3] To the extent that we have considered the additional grounds, we conclude that termination was also proper under MCL 712A.19b(3)(c)(*ii*), (g), and (j).

This Court focuses on *the child*—not the parent—when reviewing best interests. *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted).

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citation omitted).]

While the record supports that respondent consistently attended visitations and that she and JB were bonded, the record also supports that the bond was not healthy for JB. Respondent was never permitted to have unsupervised visitation with JB because of her substance abuse, and JB "significantly struggled . . . with attending parenting time visits." In the six months leading up to termination, the caseworker had difficulty getting JB into the vehicle to attend visitations, and several visitations were cancelled because JB refused to attend them. JB would also become "extremely escalated" after the visits, and it would take JB "about a week to get back to stable emotional regulation. . . ." As a result, respondent was only permitted to have supervised visitation with JB once each week, as opposed to twice each week.

Respondent sometimes failed to engage with JB during visitations and would fail to appropriately discipline him. At times, respondent placed blame on JB, would make him feel guilty, and would bring up the child protective proceedings. Respondent did not demonstrate insight into how her behavior impacted JB, and she refused to take responsibility for JB being taken into care. Thus, while respondent shared a bond with JB at the time of termination, the record supports that the bond was not healthy for JB. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394 (2014) (holding that the fact that there was a "serious dispute" on the record concerning whether the respondent had "a healthy bond" with her children supported that termination of her parental rights was in the children's best interests).

Additionally, as already discussed, respondent failed to maintain sobriety, failed to control her emotions, and failed to obtain appropriate housing during the proceeding. JB desperately required stability and permanence. Indeed, JB, who was nearly seven years old at the time of termination, had "significant mental health needs." JB damaged property in his foster homes, was frequently moved to different homes, and had to be transported to the hospital via police cruiser or ambulance during the proceeding because of his "significant escalations" and the foster parents' inability to "stabilize" JB's behavior. Because of JB's behavioral issues, he required "a stable parent who will spend significant time in providing structure [and] consistency to him." The record

overwhelmingly establishes that respondent was unable to provide this to JB.  For these reasons, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in JB's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola